UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| XIN SUN,<br><br>                Petitioner,<br><br>    v.<br><br>LAURA HERMOSILLO, et al.<br><br>                Respondents. | CASE NO. 2:26-cv-00215-LK<br><br>ORDER DENYING HABEAS PETITION |

This matter comes before the Court on Petitioner Xin Sun's Petition for a Writ of Habeas Corpus. Dkt. No. 1. For the reasons stated below, the Court denies Sun's petition.[1]

## I.    Background

Sun is a native and citizen of China. *Id.* at 5; Dkt. No. 10 at 1. On December 22, 2024, the United States Customs and Border Patrol ("CBP") encountered him near Tecate, California, determined that he was inadmissible, detained him under Immigration and Nationality Act ("INA") Section 235(b)(1), 8 U.S.C. § 1225(b)(1), and began expedited removal proceedings. Dkt. No. 10 at 1–2; Dkt. No. 11-2 at 4. On January 7, 2025, Sun was transferred from California to the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. No. 10 at 2. On

---

[1] The Court declines to hold an evidentiary hearing because the record is sufficient for adjudication of the petition. *See Owino v. Napolitano*, 575 F.3d 952, 954 (9th Cir. 2009) (holding that "the district court must hold an evidentiary hearing" where "the record is insufficient to decide whether [the petitioner's] detention is authorized by statute").

ORDER DENYING HABEAS PETITION - 1

January 21, 2025, Sun expressed fear of returning to China, and U.S. Immigration and Customs Enforcement ("ICE") referred his claim to a U.S. Citizenship and Immigration Service ("USCIS") Asylum Officer. *Id.* On April 2, 2025, USCIS issued a Notice to Appear charging Sun as removable under INA Sections 212(a)(7)(A)(i)(I) and 212(a)(6)(A)(i), 8 U.S.C. §§ 1182(a)(7)(A)(i)(I), (a)(6)(A)(i). *Id.*; *see* Dkt. No. 11-1.

On September 25, 2025, after several continuances to allow Sun's counsel more time to prepare, an immigration judge denied his claim for asylum and ordered him removed but granted him withholding of removal to China. Dkt. No. 10 at 2.[2] The order became final the same day because both parties waived appeal. *Id.*; Dkt. No. 10-1 at 4. On January 9, 2026, ICE Enforcement and Removal Operations ("ERO") served Sun with a Form I-299(a), "Warning for Failure to Depart," and requested that Sun choose three to five countries for removal. Dkt. No. 10 at 2. ERO requested that Sun submit his choice of countries by January 19, 2026, but he did not do so, even after ERO followed up with him on January 20, 2026. *Id.*; Dkt. No. 12 at 2–3. "ERO is working to obtain a [travel document] for [Sun] to whichever country [he] may potentially be removed." Dkt. No. 10 at 2. Sun continues to be detained at NWIPC. Dkt. No. 1 at 2.

On January 20, 2026, Sun (through counsel) filed his petition for habeas corpus. Dkt. No. 1. Respondents[3] filed a return, Dkt. Nos. 9–11, and Sun filed a traverse. Dkt. No. 12.[4]

---

[2] Sun asserts that the withholding of removal order was issued on September 27, 2025; he purports to attach the Immigration Judge's decision as Exhibit 2 to his habeas petition, Dkt. No. 1 at 6, but there are no exhibits attached. Based on Respondents' documentation, Dkt. No. 10-1, the Court assumes that the decision was issued and became final on September 25, 2025; the slight discrepancy does not impact the analysis here.

[3] Although Bruce Scott, the warden of the NWIPC, has not appeared in this case, (1) the purpose of naming the petitioner's custodian is to effectuate injunctive relief where appropriate, *see Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (the custodian has "the power to produce the body of [the petitioner] before the court or judge," such that "he may be liberated if no sufficient reason is shown to the contrary" (citation modified)); and (2) federal respondents often represent the warden's interests, as they do in this case, *see Doe v. Garland*, 109 F.4th 1188, 1196 (9th Cir. 2024) ("Even in cases where private contract wardens are named as respondents, the government can and has stepped in to defend its interest in keeping petitioners detained.").

[4] Sun's traverse includes additional facts and three additional exhibits that are not authenticated by any declaration.

ORDER DENYING HABEAS PETITION - 2

## II. Discussion

In his petition, Sun asserts four grounds for relief: (1) Respondents have violated 8 U.S.C. § 1231(a)(6), as interpreted by *Zadvydas v. Davis*, 533 U.S. 678 (2001), because Sun's "continued detention has become unreasonable because his removal is not reasonably foreseeable"; (2) Respondents have violated the Administrative Procedure Act ("APA"), 5 U.S.C. 706(2)(A), because "ICE has departed from its own policy in continuing to detain Petitioner after he was granted protective immigration relief, without determining whether exceptional circumstances warrant his continued detention"; (3) Respondents have violated INA Section 236(c), 8 U.S.C. § 1226(c), because Sun does not have a criminal conviction history; and (4) Respondents have violated the due process clause of the Fifth Amendment "by denying [Sun] an individualized custody review to which he is entitled under ICE policy." Dkt. No. 1 at 15–17. For these alleged violations, Sun asks the Court to review Sun's "custody under the standard articulated in ICE policy and issue a Writ of Habeas Corpus ordering Respondents to immediately release Petitioner from custody[.]" *Id.* at 18.

### A. Legal Standards

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release

---

*See* LCR 7(b) (if a brief "requires consideration of facts not appearing of record, the [filer] shall also serve and file copies of all affidavits, declarations, photographic or other evidence presented in support of the motion"). The appropriate way to introduce newly discovered evidence is through a motion for leave, not through unilaterally presenting the evidence in a reply brief. *Thompson v. Comm'r*, 631 F.2d 642, 649 (9th Cir. 1980) ("The general rule is that [litigants] cannot raise a new issue for the first time in their reply briefs."). The traverse states that "co-counsel, Sara Liu . . . declares that the following is true and correct to the best of her knowledge," Dkt. No. 12 at 2, but Ms. Liu did not sign the traverse at all, much less under penalty of perjury, *id.* at 6; *see also* 28 U.S.C. § 1746 (requiring declarations to be signed under penalty of perjury). Even if the Court were to consider the new facts and exhibits in the traverse, it would not impact the Court's analysis.

ORDER DENYING HABEAS PETITION - 3

from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas*, 533 U.S. at 687.

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "The Fifth Amendment guarantees due process in deportation proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001). "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) (recognizing that Fifth Amendment due process protections extend to deportation proceedings, but noting that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process").

When a final order of removal has been entered, a noncitizen enters a 90-day "removal period." 8 U.S.C. § 1231(a)(1). To ensure a noncitizen's presence for removal and to protect the community from noncitizens who may present a danger, Congress mandated detention during the removal period. 8 U.S.C. § 1231(a)(2). Section 1231(a)(6) authorizes ICE to continue detention of noncitizens after the expiration of the removal period. 8 U.S.C. § 1231(a)(6). Although there is no statutory time limit on detention pursuant to Section 1231(a)(6), the Supreme Court has held that a noncitizen may be detained only "for a period reasonably necessary to bring about that

[noncitizen's] removal from the United States." *Zadvydas*, 533 U.S. at 689. "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699.

The "presumptively reasonable" period for detention following a removal order is six months. *Id.* at 701. "After this 6-month period, once the [non-citizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* "And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.* Section 1231(a)(6) thus "requir[es] release from long-term detention" when there is no significant likelihood of removal in the reasonably foreseeable future. *Jennings v. Rodriguez*, 583 U.S. 281, 311 (2018) (citation modified).

B.   **Sun's Request for Release under *Zadvydas* is Premature**

The parties agree that Sun is detained pursuant to 8 U.S.C. § 1231(a) because he has received a final order of removal. Dkt. No. 1 at 3; Dkt. No. 9 at 8.[5] The 90-day statutory "removal period," during which Sun's detention was mandatory, 8 U.S.C. § 1231(a)(2)(A), began on September 25, 2025 and concluded on December 24, 2025. Noncitizens "may be detained beyond the removal period," 8 U.S.C. § 1231(a)(6), but only "for a period reasonably necessary to bring about that [noncitizen's] removal from the United States." *Zadvydas*, 533 U.S. at 689.

Sun has been detained for fewer than six months since his final removal order, so he is within the "presumptively reasonable" period for detention. *Id.* at 701. In his traverse, Sun contends that "[p]re-order detention is still detention," Dkt. No. 12 at 1, but the time he spent in ICE detention from December 2024 until September 2025, while his removal proceedings were

---

[5] For this reason, the Court denies Sun's third claim for relief. Dkt. No. 1 at 16–17. Sun is not currently detained under 8 U.S.C. § 1226, so his claim that his detention violates that section of the INA lacks merit.

ORDER DENYING HABEAS PETITION - 5

ongoing, was pursuant to Section 1225(b)(1), not Section 1231. Dkt. No. 10 at 2; Dkt No. 11-2 at 4. The six-month presumptively reasonable period under *Zadvydas* begins the date the removal order becomes final, when the justification for detention shifts to Section 1231. *See Zadvydas*, 533 U.S. at 683, 701.

Sun contends that his removal is not reasonably foreseeable because (1) he cannot be removed to his home country of China given the immigration judge's order of withholding, (2) "ICE has historically managed to remove only a tiny fraction of non-citizens granted Withholding of Removal to alternative countries," and (3) it is unlikely that other countries would accept Sun. Dkt. No. 1 at 12. Respondents assert that "ERO is working to obtain a [travel document] for Petitioner to whichever country Petitioner may potentially be removed," Dkt. No. 10 at 2, and that "ICE is actively pursuing [Sun's] removal," Dkt. No. 9 at 8.

Sun's detention is presumptively reasonable for six months after his final removal date, or until March 25, 2026. Respondents assert that they are working toward removing him to a third country in the near term.[6] Under these circumstances, Sun has not provided sufficient evidence or argument to overcome the presumption that his continued detention is reasonable. He is thus not entitled to release under *Zadvydas*. *See Medina v. Bondi*, No. CV-26-00178-PHX-MTL (DMF), 2026 WL 160830, at *1 (D. Ariz. Jan. 21, 2026) (denying relief under *Zadvydas* when "Petitioner's detention is within the presumptively reasonable period"); *Jiang v. Bondi*, No. CIV 25-0922 KG/GBW, 2025 WL 3281819, at *2 (D.N.M. Nov. 25, 2025) (same).

---

[6] Respondents also argue that Sun's "refusal to cooperate with ICE's efforts" to identify a potential third country for removal should weigh against him. Dkt. No. 9 at 8 (citing *Lema v. INS*, 341 F.3d 853, 856 (9th Cir. 2003)); *see also* 8 U.S.C. § 1231(a)(1)(C) ("The removal period shall be extended beyond a period of 90 days and the [noncitizen] may remain in detention during such extended period if the [noncitizen] fails or refuses to make timely application in good faith for travel or other documents necessary to the [noncitizen's] departure or conspires or acts to prevent the [noncitizen's] removal subject to an order of removal."). The Court need not address this argument since it finds that regardless, Sun's petition is premature.

ORDER DENYING HABEAS PETITION - 6

**C.    Sun's APA and Policy-Related Due Process Claims Are Denied**

Sun also alleges violation of the Administrative Procedure Act and due process based on ICE's alleged failure to follow its own policies. In his second claim for relief, he alleges that "ICE has departed from its own policy in continuing to detain Petitioner after he was granted protective immigration relief, without determining whether exceptional circumstances warrant his continued detention." Dkt. No. 1 at 16. He claims this is "arbitrary, capricious, and contrary to the law." *Id.* In his fourth claim for relief, Sun also alleges that "ICE has violated Petitioner's due process rights by denying him an individualized custody review to which he is entitled under ICE policy." Dkt. No 1 at 17.

But Sun does not identify any particular ICE policy in these claims, and instead adopts a shotgun approach whereby "each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire [petition]." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321 (11th Cir. 2015). This kind of petition "mak[es] it nearly impossible for Defendants and the Court to determine with any certainty which factual allegations give rise to which claims for relief." *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1356 (11th Cir. 2018); *see also E.K. v. Nooksack Valley Sch. Dist.*, No. C20-1594-JCC, 2021 WL 1531004, at *2 (W.D. Wash. Apr. 19, 2021) (same). Sun cannot simply list off various regulations and policies in random places in his petition, incorporate all his allegations by reference at the end, and then expect the Court to piece together the substance of his claims for him. *Clark v. Sweeney*, 607 U.S. 7, 9 (2025); *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003).

Furthermore, it appears that Sun has abandoned these claims, as he does not respond to Respondents' arguments regarding them in his reply. *See* Dkt. No. 9 at 11–12; *see generally* Dkt. No. 12. The Court accordingly denies the claims.

## III. CONCLUSION

For the foregoing reasons, the Court DENIES Sun's petition without prejudice.

Dated this 24th day of February, 2026.

*Lauren King*

Lauren King
United States District Judge

ORDER DENYING HABEAS PETITION - 8